**UNITED STATES DISTRICT COURT
DISTRICT OF MAINE**

| | |
|---|---|
| **CELINE J. TOLINI,** ) | |
| ) | |
| *Plaintiff* ) | |
| ) | |
| v. ) | ***Docket No. 05-230-P-S*** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| ***Commissioner of Social Security,*** ) | |
| ) | |
| *Defendant* ) | |

***REPORT AND RECOMMENDED DECISION[1]***

This Social Security Disability ("SSD") appeal raises the question whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from chronic obstructive pulmonary disease ("COPD"), depression/anxiety, osteoarthritis of the thumbs, and lumbar and left-hip osteopenia/osteoarthritis, was capable of returning to her past relevant work as a jewelry-store manager prior to her date last insured of June 30, 2001. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that through June 30, 2001 the plaintiff's COPD, osteoarthritis in the

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 22, 2006, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

hands and osteopenia in the lumbosacral spine and hip were "severe" impairments but did not meet or equal the criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. §404 (the "Listings"), Findings 3-4, Record at 20; that through June 30, 2001 she retained the residual functional capacity ("RFC") to lift up to ten pounds frequently and up to twenty pounds occasionally, stand and walk for about six hours in an eight-hour work day and sit for at least six hours in an eight-hour work day, although she was unable to kneel, crawl, squat, climb ropes or ladders, work around dust, extreme cold or fumes, or use her hands more than occasionally, Finding 6, *id*.; that her past relevant work as a jewelry-store manager did not require the performance of work-related activities precluded by her RFC, Finding 7, *id*.; and that she therefore was not under a disability at any time through June 30, 2001, Finding 9, *id.* The Appeals Council declined to review the decision, *id*. at 7-10, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge in this case reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of demonstrating inability to return to past relevant work. 20 C.F.R. § 404.1520(e); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §

404.1520(e); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service Rulings 1975-1982* ("SSR 82-62"), at 813.

The plaintiff contends, in essence, that the administrative law judge erred in failing to take into account nonexertional limitations arising from her emotional impairments. *See generally* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 6). I find no reversible error.

## I. Discussion

In his Findings, the administrative law judge (i) omitted anxiety and depression from a list of "severe" impairments suffered by the plaintiff as of June 30, 2001, and (ii) included no sequelae from those impairments in his RFC determination. *See* Findings 3 & 6, Record at 20. In the body of his decision, he elaborated, in relevant part:

> The claimant did begin psychological counseling in January 2002. While she was noted to be taking Valium in April 2001, it was reported that she denied any feelings of depression but admitted to stressful situations at home. There is no record of her treating physician referring the claimant for treatment at that time. Therefore, I find the claimant's anxiety was not a medically determinable impairment through June 30, 2001.

*Id*. at 18 (citations omitted).

The plaintiff points out, correctly, that per Social Security Ruling 96-8p ("SSR 96-8p"), an administrative law judge must consider the sequelae of even non-severe impairments in determining a claimant's RFC. *See* Statement of Errors at [3]; SSR 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004), at 148 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or

restrictions due to other impairments – be critical to the outcome of a claim.").

She further points out, correctly, that when her counsel asked the vocational expert at hearing to assume not only the physical limitations posited by the administrative law judge but also "an emotional component which up to a third of the time, ha[s] caused interruptions in a work day for whatever reason[,]" the vocational expert testified that an individual with those impairments could not perform work as a jewelry-store manager – or any competitive work at the sedentary or light level. *See* Statement of Errors at [2]; Record at 437-39.[2]

The problem for the plaintiff is that, even assuming *arguendo* that she suffered from medically determinable anxiety and depression impairments as of June 30, 2001, and the administrative law judge hence should have included sequelae of any such impairments (severe or non-severe) in his RFC determination and in his concomitant questions to the vocational expert, one searches the Record in vain to find evidence that that those impairments would have caused the sort of workday interruptions the plaintiff's counsel posited to the vocational expert, or for that matter any sort of functional limitations. The lack of any such evidence, which the plaintiff bore the burden to produce, is fatal. *See, e.g.*, SSR 96-8p at 143 ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.").

The plaintiff's claim was reviewed, prior to her request for a hearing, by two Department of Disability Services ("DDS") non-examining psychological consultants, Thomas A. Knox, Ph.D., and

---

[2] At hearing, the plaintiff's counsel further described the hypothetical interruptions of the work day flowing from the "emotional component" as entailing causing "either breathing or maybe a fear of an attack of breathing, some degree of anxiety and mood disorder[.]" Record at 437.

Peter G. Allen, Ph.D., both of whom concluded that there was insufficient evidence to assess her condition as of her date last insured. *See* Record at 156 (Knox Psychiatric Review Technique form ("PRTF") dated September 22, 2003); 206 (Allen PRTF dated January 6, 2004). The plaintiff suggests that the DDS made a "fairly ineffectual" effort to obtain contemporaneous medical records, *see* Statement of Errors at [4]; however, Dr. Allen indicated that all listed sources had been contacted, *see* Record at 218, and the plaintiff's counsel admitted at hearing that he himself had difficulty obtaining those records, *see id*. at 431-32.[3]

In any event, prior to the plaintiff's hearing, her counsel submitted a number of additional documents and records, including an RFC assessment by her longtime treating physician, Michael J. Boulanger, M.D., as well as Dr. Boulanger's progress notes covering the time period in question and beyond. *See, e.g., id*. at 118, 128, 132, 193, 228-35, 397. Olaf Andersen, M.D., a medical expert present at the plaintiff's hearing, reviewed that body of records and heard the plaintiff's testimony. *See id*. at 397, 424.[4]

The "raw" medical evidence – which included the progress notes of a treating source, R.B. Rau, from 1997 and 1998 and Dr. Boulanger's progress notes of office visits on April 10, 2000, April 24, 2001, September 11, 2001, April 25, 2002, December 3, 2002 and later – indicated that both Rau and Dr. Boulanger assessed the plaintiff prior to June 30, 2001 as suffering from emotional impairments, but did not spell out resultant functional limitations, if any. *See id*. at 340-41, 346-48, 352-53, 360-61, 370-71, 376-82. Dr. Boulanger's RFC assessment, dated January 16, 2004, and a related letter dated January 4, 2004, set forth limitations resulting from the plaintiff's physical

---

[3] The plaintiff's counsel clarified at oral argument that she does not press failure to obtain medical records as a point of error.
[4] Dr. Andersen had not been provided a copy of Dr. Boulanger's RFC assessment; however, he was afforded the opportunity to review it at hearing. *See* Record at 430-31.

impairments, but not from her mental condition(s). *See id*. at 193, 228-35.

When asked by the administrative law judge at hearing whether she had any conditions besides her COPD that prevented her from working on June 30, 2001, the plaintiff listed only her sore hands and her back. *See id*. at 409. Later, in response from a question from her counsel whether she had any conditions besides her physical conditions about which she had not informed the administrative law judge, she stated that she had been diagnosed as suffering from Post Traumatic Stress Disorder ("PTSD") subsequent to the September 11, 2001 attacks. *See id.* at 414-15. She described her PTSD condition as entailing having become a "scaredy cat" and being unable anymore to travel or to go anywhere where there are a lot of people. *See id.* at 423. As the administrative law judge pointed out, and the plaintiff acknowledged, the 9/11 incident happened subsequent to her date last insured. *See id*.

During hearing, the plaintiff's counsel asked other questions aimed at eliciting information concerning her emotional condition as of June 30, 2001, in response to which she testified that (i) she had seen Rau (misspelled "Robb") in 1997 "for many reasons[,]" including a "mid-life crisis" and childhood issues that had caused her to be depressed, anxious and to feel sorry for herself, *see id*. at 415-16; (ii) she has had mood problems for "a long time[,]" *id*. at 416; (iii) she does not like going out "because of the air"; she is "afraid that all of [a] sudden, [she is] going to have an attack" at a time she does not have her inhaler, *id*. at 416-17; (iv) Dr. Boulanger thought she was depressed back in April 2001, *see id*. at 417; (v) her "nerves" get to her because she knows how she has harmed herself from smoking, *see id*. at 418; (vi) since she stopped working, it has not been unusual for her to have crying spells (such as one she had at hearing), *see id*. at 422; and (vii) being "down" is worse for her than

being "uptight[,]" *see id*.[5]

Neither the administrative law judge nor the plaintiff's counsel directly asked the plaintiff how her emotional condition would prevent her from working, nor did either of them ask the medical expert, Dr. Andersen, for his opinion on the matter. *See id*. at 397-433.[6] Thus, while the record as a whole sheds light on the nature of the emotional impairments the plaintiff was assessed as suffering, it does not elucidate the functional limitations, if any, that such conditions imposed.[7] This default cannot be laid at the feet of the commissioner in these circumstances: As the First Circuit has observed, "When a claimant is represented, the ALJ[] should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored." *Faria v. Commissioner of Soc. Sec*., No. 97-2421, 1998 WL 1085810, at *1 (1st Cir. Oct. 2, 1998) (citations and internal quotation marks omitted).[8]

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

## *NOTICE*

***A party may file objections to those specified portions of a magistrate judge's report or***

---

[5] The plaintiff's counsel injected into his hypothetical question to the vocational expert the plaintiff's testimony concerning her fear of having a shortage-of-breath attack, *see* Record at 437; however, the plaintiff testified that she currently suffers from such fears, not that she had them as of June 30, 2001, *see id*. at 417.

[6] With respect to the plaintiff's emotional impairments, Dr. Andersen merely testified that she had "anxiety and depression as was described." Record at 429.

[7] Perhaps recognizing this difficulty, the plaintiff states that "stressed and tearful at the hearing, [she] was her worst enemy." Statement of Errors at [3] (citation omitted). She contends, however, that "she closed the doors on the one job she could arguably return to[;] 'after three break-ins and a robbery, I couldn't take it anymore.'" *Id*. (quoting her hearing testimony, Record at 399). Nonetheless, one cannot reasonably infer from this statement that the plaintiff "closed the doors" on the jewelry-store job as a result of sequelae of emotional impairments.

[8] The plaintiff posits that the functional limitations described by her counsel to the vocational expert "are the very least that devolve from longstanding severe emotional impairments." Statement of Errors at [4]. I am unwilling simply to assume that this is the case, or to predicate reversal and remand thereon. *See, e.g., Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997) ("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand.") (citation and internal quotation marks omitted) (cited with favor in *Faria*). In any event, the plaintiff expressly disclaims reliance on that assertion. *See* Statement of Errors at [4].

*proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 29th day of September, 2006.

<u>/s/ David M. Cohen</u><br>
David M. Cohen<br>
United States Magistrate Judge